Argued June 5, decided June 11, rehearing denied Oct. 22, 1912.

### BROOKS v. BECHILL.

(124 Pac. 201.)

**Sales—Construction of Contract.**

    Defendants who had a contract for the improvement of a city street contracted with plaintiffs who owned and operated a gravel pit to purchase all their screened gravel from plaintiffs at 90 cents a yard. The contract contained a clause that plaintiffs should construct bunkers and screening machinery and supply defendants with gravel as required in such quantity as plaintiffs' plant would provide, agreeing to establish a plant and furnish to defendants "not more" than a hundred cubic yards of screened gravel per day. Held, that plaintiffs under the agreement were bound to furnish and so operate their plant as to supply all defendants' demands for gravel up to 100 cubic yards per day.

From Multnomah:   JOHN P. KAVANAUGH, Judge.

Statement by MR. JUSTICE McBRIDE.

This is an action by Joseph Brooks and W. H. Downings, partners doing business under the firm name of Brooks & Downing, against T. H. Bechill and William Bechill, partners doing business under the firm name and style of Bechill Bros. The facts are as follows:

Plaintiffs and defendants entered into a contract, the material parts of which are as follows:

" * * Whereas the said Brooks and Downing have established a gravel pit in lots number one (1) and two (2) in the Town of Wayne, according to the duly recorded plat thereof, the same being now in the City of Port-

land, County of Multnomah, State of Oregon, in which
it is their intention to construct bunkers and machinery
for screening said gravel to be used in public works
in the City of Portland aforesaid; and whereas, the
said Bechill Brothers have a contract, for the improve-
ment of Vancouver avenue in the City of Portland,
County of Multnomah, State of Oregon, from Cook
avenue in said city north to Alberta street therein and
desire to purchase the gravel necessary and required
for the improvement of said street from the said Brooks
and Downing, and whereas it will be necessary for the
said Brooks and Downing to construct said bunkers and
screening in order to comply with the requirements of
the said Bechill Brothers and supply them with said
gravel and whereas the said Bechill Brothers are engaged
in the contracting business in the City of Portland, and
in their business require large quantities of screened
gravel which they desire to purchase from said Brooks
and Downing. Now, therefore, these presents witnesseth
that the said Brooks and Downing hereby agree to sell
to the said Bechill Brothers all of the screened gravel
required by them for the improvement of the said Van-
couver avenue, according to the specifications and all
of the screened gravel required by the said Bechill
Brothers in the conduct and prosecution of their con-
tracting business in the City of Portland, for the period
of twelve (12) months following this agreement at the
contract and agreed price of ninety cents (90c) per
cubic yard, all of said gravel to be measured in the street
when used for the improvement of a street and the
estimate made and allowed by the engineer of the City
of Portland to the said Bechill Brothers under their said
contract with the city for such improvements is to be
taken and accepted by the said Brooks and Downing
as the correct measurement of the gravel furnished for
such improvement and all payments are to be based
thereon. And the said Brooks and Downing further
undertake and agree to construct bunkers and screening
upon their property heretofore described on or before
the first day of July, 1907, and to supply the said Bechill
Brothers with the gravel as needed and required for
their business in such quantities as the capacity of their
plant will provide but agree to establish a plant and
to furnish to said Bechill Brothers not more than one

hundred (100) cubic yards of screen gravel per day. The said Bechill Brothers hereby undertakes, promises and agrees to purchase from said Brooks and Downing all of the screen gravel necessary and required for the improvement of Vancouver avenue in accordance with their contract with the City of Portland, and also to purchase from said Brooks and Downing all of the screen gravel necessary and required in the prosecution of their future contracts for the period of twelve (12) months from the date of this agreement as aforesaid and to pay therefor the contract and agreed purchase price of ninety (90) cents per cubic yard. Payments to be made every two weeks and according to the estimate of the city engineer as hereinbefore provided and the said Brooks and Downing shall not be required under this contract to furnish an excess of one hundred (100) cubic yards per day. It is mutually agreed between the parties hereto that the said Brooks and Downing shall construct their bunkers at the property hereinbefore described in such manner that the wagons of the said Bechill Brothers may be loaded directly from the bunkers to the wagons without the use of sholevers except for the purpose of trimming the load."

Plaintiffs brought this action without referring specially to the written contract alleging that between June 18, 1907, and September 1, 1908, they, at the special instance and request of defendants, had furnished to defendants screened gravel and screenings and performed certain team work and hauling for them of the reasonable value or $3,371.05, which sum they agreed to pay; that defendants paid thereon the sum of $2,600, leaving a balance due of $771.05.

Defendants answered admitting that plaintiffs had furnished them 2,581 cubic yards of gravel, but alleged that it was furnished under the terms of the written contract above quoted, and that it was not of the quality required in the contract, and claimed that the $2,600 credited by plaintiffs more than paid for all the gravel furnished and the hauling done by them. For a further defense and counterclaim they set up the contract and

alleged numerous breaches thereof by plaintiffs, principally (1) that plaintiffs failed to put in bunkers and machinery as required therein; and (2) that they failed and refused to furnish and were unable to furnish to defendants all the screened gravel they required for the improvement of certain streets in Portland, and that they did not at any time furnish more than 40 per cent of each material required by defendants, whereby they were greatly handicapped in the carrying out of their contract with the City of Portland and were compelled to buy gravel of other parties. They prayed for judgment against plaintiffs for $154.75 overpaid and $1,000 damages.

The case was tried by the court without a jury, and findings were made in favor of defendants for $154.75 overpayment and $500 damages. From this judgment plaintiffs appeal.                              AFFIRMED.

For appellants there was a brief over the names of *Messrs. Murphy, Brodie & Swett,* with an oral argument by *Mr. G. A. Brodie.*

For respondents there was a brief over the name of *Messrs. Wilson & Neal,* with an oral argument by *Mr. Oscar A. Neal.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This case turns upon the construction of the contract. Plaintiffs contend that they were required to furnish only such a quantity of gravel as the capacity of their plant would permit, while defendants claim that the contract should be so construed as to require plaintiffs to furnish as much as 100 cubic yards per day whenever required by them. The language of the contract is somewhat ambiguous, and in construing it it is necessary to consider the situation of the parties in reference to the subject-matter.

Defendants were street contractors bound, no doubt, by the usual conditions of that class of contracts to complete their work at a particular time and in a paricular manner and, as the contract indicates, were contemplating not only the work then secured but other like contracts in the future. Under these circumstances it is plain that it would have been impracticable and out of the usual course of things for them to have had or kept a supply of screened gravel on hand, but would naturally expect it to be delivered at the place needed. This is indicated by the provision in the contract stipulating that the gravel was to be measured upon the street after being put down; the measurement of the city engineer to be accepted by both parties. Both parties understood therefore that defendants would require large quantities of gravel and that they would require it from time to time as the exigencies of their work demanded. It would have been unreasonable and wholly unbusinesslike for defendants to have bound themselves to buy all their gravel from plaintiffs and at the same time to have left plaintiffs at liberty to construct a screening plant whose capacity might be 2 cubic yards per day or 100 cubic yards, just as they saw fit. The first requirement of the contract is that plaintiffs should sell to defendants "all the screened gravel required by them for the improvement of Vancouver avenue, according to specifications and all the screened gravel required (by them) in the conduct and prosecution of their contracting business in the City of Portland for a period of 12 months."

We will now consider clauses which it is claimed qualify or modify this otherwise absolute duty imposed upon plaintiffs. The principal qualification is in the following words:

"And the said Brooks and Downing further undertake and agree to construct bunkers and screening machinery upon their property heretofore described on or before the first day of July, 1907, and to supply the

said Bechill Brothers with the gravel as needed and required for their business in such quantities as the capacity of their plant will provide, but agree to establish a plant and to furnish to said Bechill Brothers *not more* than one hundred (100) cubic yards of screen gravel per day."

Another provision is:

"The said Brooks and Downing shall not be required under this contract to furnish an excess of 100 cubic yards per day."

Taking all these provisions together, we interpret this contract to mean that plaintiffs were bound to construct a plant with a capacity of not to exceed 100 cubic yards per day, and that they were required to so operate it as to supply all of defendants' demands upon it up to 100 cubic yards daily. This is the only construction that renders the contract effectual for the purpose intended, and it is a familiar rule "that, if by a particular construction an agreement would be rendered frivolous or ineffectual, and the apparent object of the contract would be frustrated, but a contrary exposition, though *per se* less appropriate, looking to the words only, would produce a different effect, the latter interpretation shall be applied if it can possibly be supported by anything in the contract or in the nature thereof." Chitty, Contracts (11 ed.) 112; *Cobbs* v. *Fountaine,* 24 Va. 487.

The construction above indicated makes the contract certain and effectual to accomplish the purpose contemplated. The opposite construction renders it uncertain and leaves with the plaintiff the option as to the quantity of gravel they shall furnish; an option which might be so exercised as to frustrate and render abortive the purpose of defendants in entering into the agreement.

We are of the opinion that the construction of the agreement given by the learned judge who passed upon it on demurrer and at the trial was correct, and the judgment is therefore affirmed.        AFFIRMED.